```
                UNITED STATES DISTRICT COURT
                 SOUTHERN DISTRICT OF OHIO
                     WESTERN DIVISION
```

David A. Garcia,                :    Case No. 1:10-cv-788
                                :
    Plaintiff,                :
                                :
vs.                             :
                                :
Joseph Nerlinger,               :
                                :
    Defendant.                :

**ORDER**

Before the Court are Plaintiff's objections to the Report and Recommendation of the Magistrate Judge. (Doc. 27) The Magistrate Judge has recommended that the Court grant Defendant's motion for summary judgment on Garcia's claim under 42 U.S.C. §1983. For the following reasons, the Court adopts the Magistrate Judge's recommendation.

**FACTUAL BACKGROUND**

Plaintiff David Garcia is an inmate at the Chillicothe Correctional Institution in Ohio. He filed a pro se complaint in this Court alleging that several individuals involved in his underlying state criminal case violated his constitutional rights. Garcia originally brought claims against Brad Burress, a Butler County prosecutor; Lyn Alan Cunningham, Plaintiff's defense attorney; and Joseph Nerlinger, a Butler County, Ohio police officer. Garcia's claims against Burress and Cunningham have been dismissed. Garcia alleges that Nerlinger violated his

Fourth Amendment rights when Nerlinger presented a false and misleading affidavit to a state court judge in support of a search warrant, the execution of which led to Garcia's arrest and eventual conviction for marijuana trafficking.

The affidavit at issue initially described Nerlinger's position with the Butler County Drug and Vice Investigations Unit, and his general knowledge of characteristics of drug trafficking based upon his experience and training. The relevant portions of the affidavit then state:

> 6. Within the past two months the [County Vice unit] received a tip from a reliable confidential informant that a large amount of marijuana was being stored and sold at a house located on the Westside of Hamilton. The confidential informant told us that Jeff Craft was receiving the marijuana from Phoenix, AZ.
>
> 7. Within the past two months the [County Vice Unit] received information from the DEA that a cooperative defendant gave information that a black male, "J", was bringing marijuana from Phoenix to Hamilton and Jeff Craft was receiving it. The cooperative defendant said that the marijuana was being shipped through the mail but is now being brought here by "J". Information was also received from the DEA that a vehicle that was being rented, a red Dodge Ram, through Enterprise and being driven by the suspected Phoenix dealer and Jeff Craft. [sic] On multiple occasions agents of the [County Vice unit] were able to locate the truck.
>
> 8. While conducting surveillance the Dodge truck was seen outside of the suspected residence of Jeff Craft. The vehicle was rented from Enterprise and was rented by a Sandra Ashdown. Sandra Ashdown was later found to be Jeff Craft's stepmother. Other cars later found to be driven by Jeff Craft and Nick Craft, Jeff's brother, were also seen frequently at the residence.
>
> 9. Shortly after our investigation began a shooting incident occurred in the city of Hamilton.

Confidential informants along with other anonymous complainants began to tell us that the shooting incident that occurred on the Westside of Hamilton was connected with Jeff Craft and a marijuana operation. The cooperative defendant of the DEA also stated that the individual responsible for the shooting incident on the Westside of Hamilton was a black male by the name of "J" from Arizona who was operating a red truck.

10. Information was also being received from suspects that we arrested for other charges that Jeff Craft was "holding" a lot of marijuana and that he is running with some black guys from Phoenix with semi-automatic weapons and that the marijuana was being stored at different places, Jeff's dad's, stepmother's and his place.

11. Within the past 72 hours the [County Vice Unit] received information from an anonymous complainant that 40-50 pounds of marijuana was being brought into Hamilton by a black guy by the name of "J" from Arizona.

12. Within the past 72 hours the anonymous complainant contacted the [County Vice Unit] and informed us that the marijuana was here and was being stored at 255 Cereal Avenue, Hamilton, City, Butler County, Ohio. The [County Vice unit] conducted surveillance at the residence of 225 Cereal and found numerous vehicles outside of the residence that were found to be registered to Sandra Ashdown. The residence was researched on the Butler County Auditor's website and found to be owned by Donald Craft, Jeff Craft's relative. The utilities to the residence are in the name of Donald Craft.

Deputy Nerlinger presented the warrant to a state court judge, who asked Nerlinger to clarify and add additional facts. At the judge's request, Nerlinger crossed out the word "relative" in the second-to-last line of paragraph 12 and replaced it with "father." He also hand-wrote beneath paragraph 12: "Jeff Craft is Donald Craft's son. The residence at 225 Cereal Avenue is

owned by Donald Craft. Sandra Ashdown is Jeff Craft's stepmother. Within the last three hours, numerous vehicles registered to Sandra Ashdown have been located at 225 Cereal Avenue." (Doc. 18, Nerlinger Declaration, Ex. A) The warrant was issued, and Garcia was arrested at 225 Cereal Avenue as a result of the search.

Garcia filed a motion to suppress in the ensuing state criminal case. As relevant here, Garcia argued that the warrant was based upon false and misleading information provided by an informant and by the complainant (Nerlinger), and that the warrant failed to establish probable cause. After a hearing in which Garcia was permitted to cross-examine Nerlinger, the trial court denied his motion, finding that the good faith exception to the exclusionary rule applied to the warrant and search.

After Garcia was convicted, he appealed and argued that the trial court erred in denying his motion to suppress. The court of appeals rejected his claim in an entry on June 9, 2009. The court concluded that the warrant provided a substantial basis to conclude that marijuana, drug paraphenalia, and other materials would be found at 225 Cereal Avenue. Largely adopting the conclusions it reached in his co-defendants Harry and Craft's appeals on the same issue, the court found that the information recited in Nerlinger's affidavit was reliable, was not stale, that the warrant was not overbroad, and that probable cause

existed for the search. (See Doc. 18, Ex. 7)

While his criminal appeal was pending, Garcia was apparently involved in a civil forfeiture action prosecuted in the state court arising out of the criminal case. He obtained discovery responses from Nerlinger in that case, and he bases his complaint in this case upon those responses, and upon discovery he conducted in this case. He alleges that his lawsuit is "a direct result of 60 admissions, and 6 interrogatories that were answered by defendant Nerlinger, ... and filed on November 20, 2008." Garcia alleges that these discovery responses show that Nerlinger acted "knowingly and with reckless disregard for the truth ... by drafting and presenting a Search Warrant Affidavit that he constructed to deliberately mislead the magistrate into believing there was a substantial basis to find probable cause to search the residence of 225 Cereal Avenue." (Complaint, Doc. 3 at 5)

Nerlinger moved for summary judgment, contending that Garcia's complaint is time-barred; that the Rooker-Feldman doctrine and/or issue preclusion prevent him from re-litigating the issue of whether the search warrant was supported by probable cause or contained any false or misleading statements; and that Nerlinger is entitled to qualified immunity. (Doc. 18) The Magistrate Judge's Report (Doc. 25) recommends that the motion be granted, and Garcia's complaint dismissed with prejudice, because Garcia has failed to establish a genuine factual dispute that

Nerlinger falsified the warrant affidavit, or that he perjured himself in responding to discovery in either the 2008 forfeiture action or in this action. Under both federal and state law, a party's admissions in a civil action may be used only in that action, and may not be used for any other purpose or against that party in any other proceeding. See Fed. R. Civ. P. 36(b) and Ohio Civil Rule 36(B). But even if Nerlinger's 2008 admissions and responses were admissible in this case and were compared to the warrant affidavit and/or his discovery responses in this case, the Magistrate Judge concluded that the alleged discrepancies Garcia contends exist do not establish that the warrant affidavit was false or misleading, or that Nerlinger violated any of Garcia's constitutional rights.

Garcia objects to the Magistrate Judge's conclusions. (Doc. 27) He initially objects to the statement in the Report that he did not file Nerlinger's discovery responses in the case docket. The record reflects that Garcia filed copies of those responses with his motion for additional time to respond to Nerlinger's summary judgment motion. (See Doc. 20, Ex. 1) Garcia then contends that the Magistrate Judge simply "cherry-picked" a few of Nerlinger's responses, and failed to acknowledge that Nerlinger deceived the state court magistrate into believing that all of the facts in his affidavit related to 225 Cereal Avenue (the premises searched) rather than to another address that was

apparently at some point Craft's residence (110 North C Street), where surveillance had been carried out in the months preceding Garcia's arrest. Garcia argues that Nerlinger admitted in his responses in this case that the C Street address was "a material part of the investigation," but that he deliberately omitted that fact from the warrant application, intending to deceive the magistrate into thinking that all of the information related to 225 Cereal Avenue. Garcia claims that the "only" information provided about 225 Cereal Avenue is in paragraphs 11 and 12 of Nerlinger's affidavit, and those paragraphs do not establish probable cause for the search.

As Garcia acknowledges, the basis of his claim is that Nerlinger omitted certain facts about C Street from the warrant affidavit, facts that Garcia suggests would have negated any probable cause to search Cereal Avenue. He also suggests that Nerlinger should have included more facts and information in his affidavit, and argues that Nerlinger falsely claimed that Sandra Ashdown was Craft's stepmother. Garcia contends that Nerlinger's discovery responses prove his allegations.

Garcia's discovery requests to Nerlinger in this case consist of a series of largely objectionable questions asking Nerlinger why he "failed to inform" the state magistrate or the prosecutor of certain things that Garcia asserts are both true and are material to the warrant affidavit. For example, he asked

why Nerlinger did not state that the C Street address was the place that the reliable informant told investigators was connected to marijuana trafficking; why he did not state that the rented red truck had been returned to the rental agent some time prior to the warrant application; or why he failed to include the date he received information from the DEA about the shooting incident mentioned in paragraph 9. Garcia also asked why Nerlinger changed the word "relative" in paragraph 12 and added material at the end of his affidavit. (As noted above, Nerlinger explained that these additions and clarifications were requested by the issuing judge.) And he asked Nerlinger why he said that Sandra Ashdown was Craft's stepmother, and whether Nerlinger had the "resources to determine who the biological parents of Jeff Craft are."

Nerlinger responds, and this Court agrees, that most of these details are largely irrelevant to assessing the adequacy and veracity of Nerlinger's affidavit. Whether Ashdown was Craft's stepmother or mother is immaterial to the relevant fact that she was a close relative. Whether or not Ashdown had returned the rented red truck to the rental agent is immaterial to the facts related in the affidavit, that Craft and the suspected Phoenix drug dealer had been seen driving that truck on more than one occasion. The specific date of the alleged shooting incident is immaterial to the facts related by

Nerlinger, that the informant and other anonymous complainants all told the investigators that the shooting was connected with Craft and a marijuana trafficking operation. The DEA's cooperating witness also reported that the Arizona suspect seen driving the red truck was responsible for the shooting. Garcia makes much of the fact that Nerlinger admitted in this case that he took photographs of the red truck (see Doc. 20, Ex. 1, Admission No. 10), but in the 2008 civil forfeiture discovery denied that any photographs of the truck had been taken. Nerlinger's affidavit does not mention or rely upon any photographs, and whether or not there were photographs taken of a particular rented truck does not affect the probable cause analysis.

Garcia repeatedly asserts that Nerlinger intentionally concealed the fact that Craft's "suspected residence" mentioned in paragraph 8 was the C Street address, and not 225 Cereal Avenue. Even if Craft lived at C Street during the periods of observation Nerlinger described, the facts he related about the investigation provided the background information about Craft and his compatriots, and their suspected involvement with drug trafficking. In paragraph 10, Nerlinger specifically states that the investigators received information that marijuana was stored at various places owned by Craft's family, and not solely at C Street. Critically important, as recited in paragraphs 11 and

12, it was only 72 hours before the application that the agents received specific information about a specific shipment and its specific whereabouts - on Cereal Avenue.

Garcia cites <u>Franks v. Delaware</u>, 438 U.S. 154 (1978), which held that false information provided in a warrant application that is material to the probable cause determination voids the warrant, and requires suppression of the evidence seized.  He contends that Nerlinger's intentional omission of facts that Garcia asserts were material to that analysis requires entry of judgment in his favor.  In the decision in Garcia's co-defendant's appeal that addressed at length the trial court's denial of the motion to suppress, the state court of appeals concluded that Nerlinger's affidavit provided information that he received over the two months preceding the warrant application.  That information strongly implicated Craft and others in marijuana trafficking, and bringing drugs from Arizona to Hamilton.  An anonymous complainant had reported that in the previous 72 hours, a marijuana shipment arrived and was stored at 225 Cereal Avenue.  Surveillance on that address within three hours of the warrant's issuance observed vehicles parked outside Cereal Avenue that were known to be associated with Craft and his relatives and had been seen at other residences.  The court noted that

> ... trafficking is a crime where there is
> constant movement of drugs as they are often

> portable and easily transferable. ...
> Therefore, when evidence is determined to
> show that drugs will be at a place at a
> particular time, the police may have to act
> quickly before the drugs are moved and/or
> sold. The affidavit clearly presented enough
> timely information to suggest that the
> marijuana would be located at 225 Cereal
> Avenue and provided a substantial basis for
> the issuing judge to believe that the drugs
> were located in the residence.

State v. Harry, 2008 Ohio 6380, at ¶¶14-15, 2008 Ohio App. LEXIS 5301 (12th Dist. App., December 8, 2008), affirming co-defendant Harry's convictions, and cited by the same court in rejecting Garcia's appeal. (See Doc. 18, Ex. 7 at pp. 1-2) The court also noted that informants and anonymous sources had reported that Craft was storing drugs at several homes and residences belonging to Craft and his family members. But the specific information provided about the storage of drugs at 225 Cereal Avenue buttressed the timeliness of the warrant application with respect to that address. Id. at ¶¶16-17.

This Court finds that the "facts" that Garcia contends should have been included in the warrant application, even if his version of these "facts" are true, are immaterial to the state court's probable cause analysis. Garcia's allegations do not require this Court to conduct a new Franks analysis as Garcia insists, because those allegations could not support a different result in this case. The Court finds that Nerlinger's affidavit did not contain any false statements and did not omit facts that

were material to probable cause, and that the warrant clearly established probable cause to search 225 Cereal Avenue. Therefore, Garcia has not established that his constitutional rights were violated in any respect. Nerlinger is entitled to immunity from Garcia's Section 1983 claims, and to entry of summary judgment.

## CONCLUSION

As required by 28 U.S.C. §636(b) and Federal Rule of Civil Procedure 72(b), the Court has conducted a de novo review of the record in this case. After that review, and for all of the foregoing reasons, the Court agrees with the Magistrate Judge's conclusion that Nerlinger is entitled to summary judgment. Garcia's complaint is therefore dismissed with prejudice.

This Court certifies, pursuant to 28 U.S.C. §1915(a)(3) that an appeal of this Order would not be taken in good faith, and therefore denies Plaintiff leave to appeal in forma pauperis. See McGore v. Wrigglesworth, 114 F.23d 601 (6th Cir. 1997).

SO ORDERED.

THIS CASE IS CLOSED.

DATED: May 1, 2012          s/Sandra S. Beckwith
                            Sandra S. Beckwith
                            Senior United States District Judge